[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12801

_____

D. C. Docket No. 8:12-cv-01805-EAK-AEP

SARITA MERRICKS,

Plaintiff-Appellee,

versus

JEFFERY ADKISSON,
individually and in his official capacity as a
corporal of the city of Clearwater Police Department,

Defendant-Appellant,

CITY OF CLEARWATER,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 15, 2015)

Before ED CARNES, Chief Judge, COX, Circuit Judge, and ROYAL,[*] District Judge.

ROYAL, District Judge:

Defendant Corporal Jeffrey Adkisson appeals the district court's denial of his summary judgment motion based on qualified immunity. Plaintiff Sarita Merricks sued Adkisson under 42 U.S.C. § 1983 for injuries she suffered from his alleged use of excessive force during a traffic stop and search of her car. At all times relevant to this case, Adkisson acted within his discretionary authority. After carefully reviewing the record and hearing arguments of counsel, we conclude that no clearly established law put Adkisson on notice that his conduct in stopping Merricks and searching her car violated her constitutional rights. Therefore, he is entitled to qualified immunity, and we reverse the district court's ruling denying his motion for summary judgment.

I. Factual Background[1]

On August 11, 2008, Cpl. Jeffrey Adkisson was employed by the City of Clearwater Police Department and was acting within his discretionary authority.

---

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia, sitting by designation.

[1] This statement of facts comes from Merricks's deposition. There is very little dispute about what happened in this case. The only major dispute is whether Adkisson first asked Merricks to get out of the car before using force to take her out of the car. That dispute, however, has no part of this opinion because we take Merricks's version of the facts as accurate. *See Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (on review of summary judgement we "draw[] all inferences and view[] all of the evidence in [the] light most favorable to the nonmoving party").

2

While on duty in a marked patrol car, he saw Merricks's black Dodge Avenger and suspected that her window tint violated Florida law.[2] Based on suspicion of a window tint violation, he pursued her, stopped her, and planned to check her window tint. As he approached Merricks's car, however, he smelled the odor of burnt marijuana.

According to Merricks, Adkisson asked to see her license and asked her to "wind" down the other window, so he could see inside her car. While looking for her license, she asked Adkisson why he had stopped her, and he said that her window tint was too dark. She gave him her license and told him that her car was new, that the Dodge dealer had tinted her windows, and that she was sure that the tint was legal.

Because he smelled burnt marijuana, Adkisson asked Merricks if he could search her car, and she said no. After she said no, he asked her if she had been smoking, and she said no. He then asked her if someone else had been in her car who had been smoking. Once again, she said no. She understood that smoking meant smoking marijuana.

Adkisson then stuck his hand through the open window to unlock the car door. He told her that he was going to search her car. The motor was still running, and she did not turn it off, so he reached in to pull the keys out of the ignition. She

---

[2] Florida Statute § 316.2953.

resisted. She held onto the keys and would not let him take them or turn off the car. Again, she said that he could not search her car. He asked her what she was going to do to stop him. Again, she told him that he could not search her car. She told him three times that he could not search her car.

During this scuffle over the keys and Adkisson's efforts to search the car, he tried to get Merricks out of the driver's seat. He could not get the keys to turn off the car because she was holding onto them, so he took her by the arm and jerked her hard to remove her from the seat. However, he could no remove her because she had on her seat belt. Then, while holding her by her wrist with one hand, he unbuckled the seat belt with his other hand and jerked her out of the car. He again told her that he was going to search her car.

After she came out of the car, Merricks asked Adkisson if she could sit on the curb. He said no. Then she asked if she could sit on the hood of her car. Again, he said no and told her that he did not want her to run off. He put her in the back seat of his patrol car while another officer searched her Dodge. He never handcuffed her.

During the search, Adkisson stood in the doorway of the patrol car to keep her from leaving. While standing there, he told her to "give it up." But she said that she did not know what he was talking about. He told her to tell him where the

drugs were because they were going to find them anyway. But, again, she said that she did not know what he was talking about and denied having any drugs.

The search did not take long because her car was very clean. After the other officer found nothing in the Dodge Avenger, a female officer came to the scene and searched Merricks's person but also found no drugs. Adkisson then released her, and she drove off. He did not give her a traffic citation.

Finally, and as background information, the stop occurred in a violent, high-crime, and high-drug neighborhood. A crowd gathered during the search. And, as a result of Adkisson's efforts to get Merricks out of the car, she allegedly suffered a torn rotator cuff and had it surgically repaired.

II. Procedural History

In August of 2012, Sarita Merricks filed a complaint and then an amended complaint in the United States District Court against Jeffery Adkisson and the City of Clearwater. The complaints alleged that defendants violated her constitutional rights under 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution. She also alleged a common law state claim for battery. (No part of this appeal deals with the City of Clearwater or the state battery claim.)

After discovery, Adkisson moved for summary judgment based on the qualified immunity defense. He argued that he was acting within his discretionary authority when he stopped Merricks, which is not disputed. He further contended

5

that he had arguable probable cause for the stop, that he was lawfully entitled to require Merricks to exit her car, and that the force he applied did not violate her constitutional rights.

The district court denied Adkisson's motion. The district court found that the force that Adkisson applied to eject Merricks from her car could easily be considered excessive. The court further found that Adkisson did not perceive any immediate threat or danger, and that the crime, a nonviolent drug related offense, was not severe. Also, the court found that Merricks did not actively resist or attempt to evade arrest by flight. Nowhere in its order, however, did the district court cite any cases to show the clearly established nature of this alleged constitutional violation.

III. Standard of Review

This case involves an interlocutory appeal from the district court's denial of Adkisson's motion for summary judgment based on qualified immunity. As a consequence, we conduct a *de novo* review. *Kjellsen v. Mills*, 517 F.3d 1232, 1236 (11th Cir. 2008). We have jurisdiction to hear this interlocutory appeal because it involves the question of whether Adkisson's conduct violated law that was clearly established at the time the incident occurred. *Jackson v. Humphrey*, 776 F.3d 1232, 1238 (11th Cir. 2015). Furthermore, because Adkisson appeals from a summary judgment order, we must draw all reasonable inferences in favor of Merricks, who

6

opposed the motion. *Whately v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999). Also, a motion for summary judgment should be granted only if the evidence shows that there is no genuine dispute concerning any material fact, and that the movant is entitled to judgment as a matter of law. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). Accordingly, we must first resolve all material issues of fact in favor of Merricks, and then answer the legal question about whether Adkisson is entitled to qualified immunity under those facts. *Jackson*, 776 F.3d at 1238.

IV. The Qualified Immunity Defense and the Clearly Established Requirement

The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). This defense shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). In part, this defense recognizes the problems that government officials like police officers face in performing their jobs in dynamic and sometimes perilous situations. It is also designed to avoid excessive disruption of government services and to provide a direct way to end insubstantial claims on summary judgment. *Id.*

7

But the clearly established law requirement serves another purpose. It provides government officials with the ability to anticipate what conduct will give rise to liability for a constitutional violation. *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042, 97 L. Ed. 2d 523 (1987). To that end, when officials are acting within their discretionary capacity, they "can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." *Id*. As a consequence, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S. Ct. at 3039. This imposes an objective standard, and that objective standard is "measured by reference to clearly established law." *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738.

Because this objective standard is fundamental to the qualified immunity defense, the district judge, in ruling on a motion for summary judgment, should determine if the law was clearly established at the time the incident occurred. As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Id.* at 818-19, 102 S. Ct. at 2738.

In this way, both government officials and citizens are protected. If the law is not clearly established, then the court should dismiss the case against the government official. If the law was clearly established, then the claim against the government official should go forward, and summary judgment should be denied.

Furthermore, recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law "in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation. *Marsh v. Butler*, 268 F.3d 1014, 1032 (11th Cir. 2001) (en banc), *abrogated on other grounds*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To be clearly established, the precedent must give officials clear warning of unconstitutional conduct. *Id.*

In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law. As this Court has explained:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could

9

believe that the factual differences between the precedent and the circumstances facing the official *might* make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent. Thus, every fact need not be identical. Minor variations in some facts (the precedent lacks arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents, leaving the law applicable—in the circumstances facing the official—*not* clearly established when the defendant acted." *Id*.

Furthermore, the court cannot consider just any case law to decide if a right was clearly established. Only binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed, can serve as precedent for this analysis. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). The salient question for this case, therefore, is whether the state of the law on August 11, 2008 gave Adkisson fair warning that his treatment of Merricks was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002).

Finally, and very important for this case, "[o]nce the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'" *Rich v. Dollar*, 841 F.3d 1558, 1564 (11th

10

Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847 (11th Cir. 1983)). The record and case authority show that Merricks has failed to carry this burden.

Note that in ruling on this case, we will not decide if Adkisson's actions against Merricks amount to a constitutional violation for excessive force against her. Rather, the Court will only consider the clearly established law question as authorized by *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

## V. Discussion

It is undisputed that Adkisson lawfully stopped Merricks based on a suspected window tint violation. It is also undisputed that he had the right to search her car.[3] And although Merricks at first cooperated with Adkisson by providing her license and registration, when he told her that he was going to search her car, her cooperation abruptly ended. Confrontation started. Three times she told him that he could not search her car. She kept the car running and obstructed him from taking the keys out of the ignition. A scuffle ensued over the keys. She struggled with Adkisson to keep him from taking control of her and her Dodge Avenger. As a consequence, he tried to jerk her out of the car. Because she had on her seat belt, he had to jerk her arm twice. That was the only physical force he used against her.

---

[3] Merricks's counsel admitted both points at oral argument. Moreover, the smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle. *See United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc).

Moreover, this stop, struggle, and search occurred in a neighborhood known for violence and drug crime.

In view of these undisputed facts, we have a law enforcement officer with probable cause to search a car, who finds himself in a struggle with the driver. The car is still running, which threatened the officer's safety and enhanced the driver's opportunity to flee.[4] She did not submit to the search. She did not cooperate in the search. Rather, she struggled with a law enforcement officer trying to search for contraband. Once she did submit, meaning after he got her out of the car, he did nothing more to her other than put her in the back of his patrol car to keep her from leaving. He did not handcuff her. He only used force twice trying to jerk her out of the driver's seat. He never beat her, struck her with his fists, pepper sprayed her, or kicked her. In essence, Adkisson had the right to search her car, but Merricks would not let him.

Regarding the use of force in this situation, the Supreme Court explained: "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72, 104 L. Ed. 2d 443 (1989). Indeed, in this Circuit, we recognize that the typical arrest may involve some force and injury.

---

[4] Merricks's counsel admitted at oral argument that Merricks could have shifted into drive and injured Adkisson as she fled.

*Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Consequently, based on the facts in this case, it was reasonable for Adkisson to believe that he could stop Merricks and search her car and her person for contraband. It was also reasonable for him to believe that he could turn off the car, take the keys, and get her out of the car to search it.

Furthermore, it was also reasonable for him to believe that he could apply at least some force to Merricks to carry out the search in view of her resistance. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97, 109 S. Ct. at 1872. And although we are not ruling on the reasonableness of the force he used to get her out of the car, Adkisson was in a tense and uncertain situation, faced with a suspect who refused to cooperate and who struggled to keep him from searching her car.

These are the simple facts that we have to work with in deciding this appeal. As noted above, because Adkisson was at all times acting within his discretionary authority, the burden shifts to Merricks to prove that the law was clearly established at the time of this incident. Because it is undisputed that he was attempting to bring Merricks under control and because she was not submitting to his lawful authority, we can easily distinguish the cases Merricks has cited to

support the clearly established prong of the qualified immunity defense. *Zeigler*, 716 F.2d at 849. To meet this burden, Merricks has cited the following three cases.

In *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000), an appeal from a jury verdict for plaintiff, a police officer responded to a burglar alarm at a store. He saw footprints leading away from the store, so he called for a canine unit. When the second officer arrived with the dog, the dog followed the trail and found a suspect, plaintiff, hiding in a canal. At all times after the officers discovered him, plaintiff cooperated with them. He submitted to their orders. He offered no physical or verbal resistance, and when one of the officers told him to lay on the ground, he did. But despite his cooperation, one of the officers turned the dog loose on him. The dog attacked him and continued to bite him for as long as two minutes. A jury returned a verdict for plaintiff, and the court of appeals affirmed and denied the qualified immunity defense raised at trial by motion under Fed. R. Civ. P. 50. *Id.* at 923.

In *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), a simple case both factually and legally, defendants arrested plaintiff who was high on cocaine and disrupting a Publix supermarket. One of the officers struck plaintiff in the stomach when he was not resisting and posed no danger to the officers. As the Court explained, "Hadley neither resisted arrest nor posed a danger to Officer Ortivero

sufficient to warrant a blow to the stomach. Thus, Officer Ortivero was not entitled to use any force at that time." *Id.* at 1330.

In *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008), a deputy sheriff went to an apartment complex in response to a domestic violence dispatch. Upon arriving at the complex, and without incident, he arrested the alleged perpetrator and put her in his patrol car. Several other officers came to the scene to assist. While one of the officers was interviewing the victim of the domestic violence, plaintiff Reese, who owned the apartments and acted as caretaker, came to the scene and asked if the officers could move their patrol cars because they were preventing others from entering the apartments. Throughout his conversations with the officers, Reese maintained a calm demeanor. He did not try to impede or hinder the officers in the performance of their duties. *Id.* at 1272-73. Nonetheless, they beat him.

The Court concluded that there was no probable cause and no justification to use any force against Reese. When he turned away from one officer to go talk to another officer, one of the defendants grabbed him by the arm, jammed him against a wall, put him in a chokehold, struck him, and then threw him to the ground. While he was on the ground, all four defendants piled on top of him and began kicking and beating him. They twisted his arm behind his back despite his screams that they were breaking his arm, and one officer pepper sprayed him in the face.

15

All this occurred while he was on the ground and not fighting back or attempting to escape. *Id.* at 1273.

As the Court explained, "in view of the fact that Reese was lying face down on the ground, was not suspected of having committed a serious crime, did not pose an immediate threat of harm to anyone, and was not actively resisting or evading arrest, the defendants' use of force was a wholly disproportionate response to the situation." *Id.* at 1274. Furthermore, the Court found that based on these facts, there was no need for Reese to show clearly established law. Their conduct went so far beyond the hazy border between excessive and acceptable force that they knew they were violating Reese's constitutional rights. Consequently, based on Reese's version of the facts, the beating fell within the core of what the Fourth Amendment prohibits:  "a severe beating of a restrained, non-resisting subject." *Id.*

These three cases do not help Merricks, and they do not show clearly established law to put Adkisson on notice that his acts violated her constitutional right. First, none of the cases cited by Merricks involved an automobile stop and search. Although that is not dispositive, there is a significant difference in these three cases and Merricks's case. The plaintiffs in the cases Merricks has cited were all on foot. As the facts in this case show, Merricks's car was still running. She would not surrender the keys or turn her car off; therefore, she could have easily driven off and in fleeing, severely injured Adkisson who was trying to get her out

16

of the car. Thus, Adkisson was in a potentially life-threatening situation.[5]

Moreover, if she had fled, a chase would most likely have ensued, which would have endangered her, the pursuing officers, other drivers, and neighborhood pedestrians.

Second, although Merricks was not resisting arrest, she was resisting the search. Three times she told the officer he could not search her car. She struggled with him to keep him from taking the keys. Although no contraband was found in her car or on her person, the officers did not know that until they had completed the searches. And because, as G.W.F. Hegel[6] explained, the owl of Minerva flies only at dusk, we do not decide these cases based on 20/20 hindsight. *See Graham*, 490 U.S. at 396, 109 S. Ct. at 1872 (stating "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Also, although simple possession of marijuana may not be a particularly serious crime, automobile searches based on the odor of marijuana can lead to the discovery of more serious contraband, like cocaine, methamphetamine, and illegal weapons.

There is substantial case authority in the Supreme Court and this Circuit clearly establishing that harming a suspect after that suspect is compliant,

_____

[5] This is not simply hypothetical. See the facts in the recent case of *Mobley v. Palm Beach County Sheriff Dep't*, No. 13-11972, 2015 WL 1651850, at *1 (11th Cir. Apr. 15, 2015), where a police officer reached through the window, grabbed the suspect driver and tried to open the door. The suspect drove off and dragged the officer for 20 feet inflicting serious injury. *Id.*

[6] Hegel was the pre-eminent philosopher of early 19th century Germany.

cooperative, under control, or otherwise subdued is gratuitous and, therefore, constitutionally excessive. The three cases Merricks cites establish nothing more than that. On the other hand, there is little, if any, authority dealing with the force an officer can use when he has the undisputed right to search a vehicle, and the driver obstructs the search. For that reason, in analyzing excessive force cases, it is important to understand not only what force was applied but when it was applied. If gratuitous force was applied after the suspect was subdued or otherwise cooperating, qualified immunity will likely not apply, unless the force is *de minimis*. *See Hicks v. Moore*, 422 F.3d 1246, 1253–54 (11th Cir. 2005) ("[W]e stress that not every intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment."); *Vinyard v. Wilson*, 311 F.3d 1340, 1344, 1348 n.13 (11th Cir. 2002) (concluding that force was *de minimis* when officer dragged the plaintiff, following arrest, "either by her shirt, her arm, or her hair."); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (concluding force was *de minimis* when officers "slammed" the cooperating plaintiff against a wall and kicked his legs apart). If, on the other hand, the force was applied when the officer was trying to take control of the suspect or the situation confronting him, the officer can make a much better claim to the qualified immunity defense. Merricks's claim falls into the latter category.

18

Consequently, she has failed to satisfy her burden of showing the clearly established nature of the alleged constitutional violation.

But Merricks has another problem in satisfying her burden in this case. And that problem arises out of one of the seminal cases in this Circuit's jurisprudence on Fourth Amendment excessive force claims. In *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002), plaintiff Vinyard was at a cookout drinking beer at a friend's home. Defendant Stanfield, a deputy sheriff, stopped by the cookout and told Vinyard that a neighbor had complained that Vinyard's son had given the neighbor's son beer. Deputy Stanfield told Vinyard to stay away from the neighbor's house. Later, Vinyard left the party and went down the street to get her son. She went by the complaining neighbor's house and got into an argument with the neighbor. Shortly thereafter, Stanfield returned and asked her if she had been to the neighbor's residence, and without giving her the opportunity to respond, he arrested her and put her in the patrol car. *Id.* at 1343.

The Court's opinion focused on what happened in the patrol car on the way to the jail. Vinyard was in the back seat, handcuffed behind her back, and a protective screen separated her from Stanfield. In other words, there was nothing she could do to harm him. Stanfield and Vinyard exchanged insults on the ride to the jail, and before reaching the jail, Stanfield stopped the patrol car, got out,

19

opened the back door, grabbed plaintiff, pulled her head back by her hair, and peppered sprayed her in the face two or three times. *Id.* at 1343-44.

This Court reversed the district court's grant of summary judgment to Stanfield based on qualified immunity. Although the Court concluded that the law was not clearly established with factual specificity, it did not matter because based on Vinyard's version of the facts, no objectively reasonable police officer could believe that he could stop the car and assault and then pepper spray Vinyard when she could not harm him. Indeed, Stanfield's conduct went well beyond the hazy border between excessive and acceptable force. *Id.* at 1356. That is enough to defeat qualified immunity at the summary judgment stage. (More on this below.)

Up to this point, *Vinyard* is similar to the three cases Merricks cites. But there is a difference, and the difference lies in a fact about Stanfield's conduct that was mentioned but was unimportant in the *Vinyard* opinion. In the opinion's factual background, the Court described what first happened when Stanfield returned to the cookout and arrested Vinyard. Here are those facts: "Vinyard again attempted to explain why she had passed Steele's [the complaining neighbor's] residence. Before she could rise, however, he grabbed her arm and jerked her out of her chair." *Id.* at 1343. This sounds like Adkisson's action against Merricks.

At no point in the opinion, however, did the Court mention Stanfield's jerking her out of her chair as part of the unconstitutional conduct or as excessive

force. Indeed, the Court concluded the *Vinyard* opinion with a very concise statement: "[we] reverse the entry of summary judgment in favor of Stanfield on Vinyard's excessive force claim as to the jail ride." *Id.* at 1357. The fact that he had grabbed her arm and jerked her out of the chair was not included in the conduct the court condemned.

The parallel is obvious because Adkisson jerked Merricks out of her car seat. Law enforcement officers reading this opinion could reasonably conclude that it is not excessive force to jerk a suspect out of her seat when probable cause exists for an arrest or a search. Hence, *Vinyard* would not only fail to put Adkisson on notice that his conduct violate Merricks's Fourth Amendment rights, it could reasonably lead him to the opposite view.

Finally, although Merricks has not asserted it, there is a narrow exception to the requirement that a plaintiff must prove clearly established law to defeat the qualified immunity defense. It is a difficult exception to meet. *Priester*, 208 F.3d. at 927. That exception was the basis for the holding in *Vinyard*, as explained above, so we will briefly outline it. The exception arises when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* at 926 (citation omitted). To satisfy this exception, Merricks would have to show that Adkisson's conduct went "so far

21

beyond the hazy border between excessive and acceptable force that [he] had to know he was violating the Constitution even without case law on point." *Id.* (citation omitted). In other words, Merricks would have to show that every reasonable officer in Adkisson's situation would know that the force he used was unlawful. *Id.* at 926-97.

In view of this narrow exception and the proof required to establish it, Merricks has not met the proof. Adkisson had probable cause to stop and to search Merricks's vehicle. Not only did she refuse to let him search it, she struggled with him to keep him from searching it by stopping him from taking her keys to turn off her car. The only force that Adkisson applied that she complained about was two yanks to get her out of the driver's seat. He never applied any other force. He did not even handcuff her. Under the circumstances, his use of force was not "far beyond the hazy border between acceptable and unconstitutional force." *Id.* at 926. And every reasonable officer in Adkisson's situation would not know that the force used was unlawful. Consequently, Merricks has failed to carry her burden of showing the clearly established nature of the alleged unconstitutional conduct or the exception described in *Vinyard*, and Adkisson is entitled to qualified immunity.

22

VI. Conclusion

Because Defendant Adkisson is entitled to qualified immunity on Plaintiff Merricks's Fourth Amendment excessive force claim, we REVERSE the district court's denial of summary judgment and REMAND for further proceedings.