[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10762

_____

H.M.,
individually and as Guardian for H.S.
an Unemancipated Minor,

                                        Plaintiff-Appellant,

*versus*

DEPUTY SHERIFF NICHOLAS VINCENT CASTORO,
in his individual capacity,
MARTIN COUNTY SHERIFF,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14319-AMC

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and ED CARNES, Circuit Judges.

PER CURIAM:

H.S. (and his mother) appeal the district court's summary judgment for Deputy Nicholas Castoro on their 42 U.S.C. section 1983 claim that Deputy Castoro violated H.S.'s Fourth Amendment rights by using excessive force during an investigatory stop. The district court granted summary judgment for Deputy Castoro because, after weighing the *Graham v. Connor*, 490 U.S. 386 (1989), factors, it concluded that the force he used was not excessive and, even if it was, Deputy Castoro was entitled to qualified immunity because any Fourth Amendment violation was not clearly established. After careful review, and with the benefit of oral argument, we agree with the district court that Deputy Castoro was entitled to qualified immunity, and affirm.

## FACTUAL BACKGROUND

On January 4, 2019, H.S., a 120-pound thirteen-year-old boy, and R.S., his twelve-year-old friend, were walking through a

residential neighborhood in Jensen Beach, Florida.[1]  As the boys were walking, H.S. and R.S. picked up a ball from a ditch across the street from a home and started to play with it.  At the same time, a mother and her children were outside of the home.  The mother told the boys that the ball was hers and they needed to return it.  Instead, H.S. cursed at the mother, gave her the middle finger, let the ball go, and left.  The mother called the police, reported the incident, and provided a description of the boys.

Deputy Castoro of the Martin County Sheriff's Office, a 250-pound man, responded to the dispatch call.  The dispatcher told the deputy that two boys entered the mother's yard, took her children's toy, and, when the mother told them to return it, the boys either threw or kicked the toy back and then cursed at her.

While driving in the neighborhood, Deputy Castoro saw H.S. and R.S.—who matched the description given by dispatch—walking on the road.  Deputy Castoro pulled up to the boys in his marked patrol car and got out.  He was wearing his uniform.  H.S. recognized Deputy Castoro as a law enforcement officer but he did not try to flee.  Instead, the three of them—Deputy Castoro, H.S., and R.S.—talked while standing on the side of the road near a grassy area about six to ten feet apart from each other.

---

[1] As we must in this summary judgment appeal, we give the facts in the light most favorable to H.S.  *See Owens v. Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022).

Deputy Castoro explained why he was there and asked for the boys' names. R.S. gave his name to Deputy Castoro but H.S. did not. Deputy Castoro asked several more times for H.S.'s name but H.S. refused, again and again, to identify himself. As Deputy Castoro and H.S. were going back and forth, H.S. put his hands into his hoodie pocket. (H.S. was wearing a pullover-style hoodie with a single large pocket.)

To Deputy Castoro, it looked like H.S. "ball[ed his hand] into a fist as if he were grabbing something." Deputy Castoro, based on his law enforcement training, knew that "any sort of weapon[] can be kept in pockets" and "anybody can be a threat." And he believed that "where [he] can't see . . . [a subject's] hands," it creates "a potentially dangerous situation" because of "the access to what can be in those pockets." So Deputy Castoro ordered H.S. to remove his hands from his pocket.

Ignoring the order, H.S. refused to take his hands out of his pocket. Several more times, Deputy Castoro ordered H.S. to remove his hands from his pocket. H.S. kept refusing. With each refusal, Deputy Castoro grew more and more angry, and his face turned red.

After H.S. repeatedly refused to remove his hands from his pocket, Deputy Castoro lunged forward and grabbed H.S.'s wrists. Deputy Castoro tried to pull H.S.'s hands out of his pocket and move them behind his back to place H.S. in handcuffs, but H.S. resisted. H.S. first resisted because he didn't know he was being arrested, but then he continued to resist because he "felt like [he]

shouldn't be getting arrested."  As the two "scuffled" over H.S.'s hands, Deputy Castoro "tried to bring [H.S.] over toward[] the grass to . . . try and soften or prevent any injuries from happening to him."

While still trying to get H.S.'s hands out of his pocket, Deputy Castoro grabbed H.S. by the lower waist, lifted him into the air, and slammed him onto the ground in a way that resembled "a wrestling move."  H.S.'s body landed on the grass, but his head struck the paved road.  After H.S. hit the ground, a pocketknife fell out of his hoodie.

As a result of the struggle, H.S. suffered a black eye, a brain bleed, and fractures to his skull, sinus bone, shoulder, collar bone, and ribs, as well as permanent injuries.

## PROCEDURAL HISTORY

H.S. (and his mother) sued Deputy Castoro under section 1983 for violating his Fourth Amendment right to be free from excessive force during the investigatory stop.  For two reasons, the district court granted Deputy Castoro's motion for summary judgment.  First, after going through the *Graham* factors, the district court concluded that Deputy Castoro did not use excessive force during the stop.  Second, the district court explained that Deputy Castoro was entitled to qualified immunity because, even if he did use excessive force, any Fourth Amendment violation was not clearly established.

H.S. appeals the summary judgment for Deputy Castoro.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Owens*, 52 F.4th at 1333. Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

Qualified immunity protects law enforcement officers performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to allow officers "to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To be entitled to qualified immunity, an officer "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful act[] occurred." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee*, 284 F.3d at 1194). "Once [he] establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* Here, the parties agree that

Deputy Castoro was acting within the scope of his discretionary authority during the stop of H.S. So, H.S. bore the burden to show that qualified immunity was not appropriate. *See id.*

H.S. must do this by satisfying both parts of the two-part test for qualified immunity. *Id.* The first part asks "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (quotation omitted) (cleaned up). For excessive-force cases, the constitutional right at issue is the plaintiff's Fourth Amendment right to be free from unreasonable seizures. *Id.* at 656. Excessive-force cases "require[] a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (cleaned up).

The second part of the qualified-immunity test asks whether the violation was "clearly established" at the time of the challenged conduct. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). While an officer's specific conduct need not have been previously held unlawful to be clearly established, "existing precedent must place the lawfulness of [his conduct] 'beyond debate.'" *Id.* at 64 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, "[t]he salient question is whether the state of the law at the

time of an incident provided fair warning to the [officer] that [his] alleged conduct was unconstitutional." *Tolan*, 572 U.S. at 656 (quoting *Hope*, 536 U.S. at 741 (cleaned up)).

We can choose which part of the qualified-immunity test to decide first—the constitutional-violation part or the clearly-established part. *Id.* at 656. Here, we start and end with the clearly-established part.

There are three ways a plaintiff can show that a violation of his constitutional rights was clearly established. First, he can "show that a materially similar case has already been decided." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quotation omitted). Second, he can show that "a broader, clearly established principle should control the novel facts" of his case. *Id.* (quotation omitted). And third, he can show the officer's conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. 2009). "Notwithstanding the availability of these three independent showings," we have emphasized "on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the [officer.]" *Corbitt*, 929 F.3d at 1312 (quotation omitted).

H.S. does not argue that we have already decided a materially similar case. He relies, instead, on the other two ways to show a clearly established violation—a broad, clearly established principle and "egregious" conduct. But neither work here.

*Deputy Castoro's conduct did not violate a broad, clearly established principle of law.*

We start with H.S.'s argument that broad principles clearly established a Fourth Amendment violation. For a broad principle to clearly establish a violation of a constitutional right, the principle must be established with "obvious clarity by the case law so that every objectively reasonable [officer] facing the circumstances would know" that his conduct violated federal law. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012) (quotation omitted). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (quotation omitted). But an officer's "awareness of the existence of an abstract right . . . does not equate to knowledge that his conduct infringes the right." *Corbitt*, 929 F.3d at 1312 (emphasis omitted) (quotation omitted). Specificity is especially important in the excessive-force context as "it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Kisela*, 584 U.S. at 104 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Therefore, officers are entitled to qualified immunity unless the broad principle "squarely governs" the specific facts of the case. *Id.* (quoting *Mullenix*, 577 U.S. at 13).

H.S. offers three statements from our case law that he contends establish with "obvious clarity" that Deputy Castoro violated H.S.'s Fourth Amendment rights. First, H.S. points to our statement from *Richmond v. Badia*, 47 F.4th 1172 (11th Cir. 2022), that "less force is appropriate when the crime at issue is a misdemeanor,

*and* the suspect does not pose a threat or attempt to flee." *Id.* at 1183 (emphasis added).

But the statement from *Richmond* does not "squarely govern[]" the facts of this case. *See Kisela*, 584 U.S. at 104. For one thing, by the time Deputy Castoro performed the wrestling move on H.S., the deputy had probable cause to believe that H.S. was committing a felony—not a misdemeanor. Leading up to the wrestling move, H.S. physically resisted Deputy Castoro's attempt to take H.S.'s hands out of his hoodie pocket because H.S. felt like he should not be arrested. Under Florida law, that's resisting an officer with violence—a felony. *See* FLA. STAT. § 843.01(1) (listing resisting an officer with violence as a third-degree felony when a person knowingly and willfully resists any officer "by offering or doing violence" to that officer); *see also State v. Green*, 400 So. 2d 1322, 1323 (Fla. Dist. Ct. App. 1981) (finding a prima facie case for resisting with violence when a defendant "wiggled and struggled" against officers attempting to handcuff him).

For another thing, unlike the statement in *Richmond*, Deputy Castoro reasonably believed that H.S. *did* pose a threat. Deputy Castoro saw H.S. reach into his pocket after H.S. refused to identify himself, and it appeared to Deputy Castoro as if H.S. was grabbing something. H.S. refused Deputy Castoro's verbal commands to take H.S.'s hands out of his pocket and physically resisted Deputy Castoro's attempt to remove H.S.'s hands from his pocket. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (finding a plaintiff posed a threat when "[s]he actively resisted the deputies'

efforts at effectuating a lawful arrest and refused to comply with their requests"). Deputy Castoro recognized from his law enforcement training that a subject's hands in his pockets may create "a potentially dangerous situation" because of "the access to what can be in those pockets."

But even if the facts of our case did fit *Richmond*, the statement that "less force is appropriate" would not put *every* objectively reasonable officer on notice that a wrestling move to subdue a potentially armed, actively resisting plaintiff violated the Fourth Amendment. *See Loftus*, 690 F.3d at 1204–05. The statement from *Richmond* is not specific enough to give a reasonable officer a "fair and clear warning" on how much force is "less" as opposed to excessive. *See Kisela*, 584 U.S. at 104–05 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Without "obvious clarity" on how much force is too much, the *Richmond* statement cannot clearly establish a broad principle of law.

Second, H.S. relies on the statement from *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), that "resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force." *Id.* at 1288. But the *Fils* statement has the same problem as the *Richmond* statement. By the time Deputy Castoro used the wrestling move on H.S.—the challenged conduct— he had probable cause to believe that H.S. was resisting arrest with force. *See* FLA. STAT. § 843.01(1). Deputy Castoro used this move only *after* H.S. physically resisted Deputy Castoro's attempt to restrain him and to secure any potential dangerous weapons. So,

even if *Fils* could be a broad, clearly established principle of law, it does not "squarely govern[]" the facts here. *See Kisela*, 584 U.S. at 104.

Third, H.S. cites *Howard v. Hudson*, 613 F. App'x 866 (11th Cir. 2015), for the principle that a plaintiff may be justified in struggling against the use of force when he was not first told he was under arrest. *Id.* at 868–69. But *Howard* is an unpublished, nonbinding case, which cannot clearly establish a violation of law so as to put every reasonable officer on notice. *See Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021) ("[U]npublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law." (quotation omitted) (cleaned up)). And even if it could, *Howard* did not say that a plaintiff is allowed to resist unless he is told by a law enforcement officer that he is under arrest. That is not the law in our Circuit. In *Draper v. Reynolds*, for example, we held that a law enforcement officer may use a taser to subdue an uncooperative and hostile plaintiff without any prior verbal arrest command. *See* 369 F.3d 1270, 1278 (11th Cir. 2004) ("Because [the plaintiff] repeatedly refused to comply with [the officer's] verbal commands, starting with a verbal arrest command was not required in these particular factual circumstances.").

In short, the case law H.S. offers does not "squarely govern[]" the factual circumstance that Deputy Castoro faced and could not have established with obvious clarity that his conduct was unconstitutional. *See Kisela*, 584 U.S. at 104.

*Deputy Castoro's conduct was not so egregious that it clearly violated a constitutional right without case law.*

Next, we address the "so egregious" way of showing a clearly established violation of a constitutional right in the absence of case law. For this "narrow exception," a plaintiff must show that the officer's "conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the [officer], notwithstanding the lack of case[ ]law." *See Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). In other words, an officer's conduct must have been "far beyond the hazy border between excessive and acceptable force." *Id.* at 926 (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). This "narrow exception" is met only where "every reasonable officer would conclude that the excessive force used was plainly unlawful." *Lewis*, 561 F.3d at 1292. That is simply not the case here.

In the rare cases where we've found that the use of force was so egregious as to put every reasonable officer on notice that it violated the Fourth Amendment, there were two common elements: the plaintiff was not resisting and he was subdued when the challenged force was used. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (distinguishing *Lee v. Ferraro* and *Priester* because the plaintiff was not restrained at the time force was applied); *Reese v. Herbert*, 527 F.3d 1253, 1274 (2008) (finding that "a severe beating of *a restrained, non-resisting*" plaintiff "falls within the core of what the Fourth Amendment prohibits." (quotation omitted) (emphasis added)). For example, in *Lee*, we explained that an officer's conduct

met the "narrow exception" because he yanked the plaintiff out of her car, slammed her against the driver's side door, cuffed her, and then slammed her head onto the trunk of her car and spread her legs with his foot, despite the fact that the plaintiff did not resist the officer "at any time during this incident." 284 F.3d at 1191, 1198–99. And in *Priester*, we concluded that the officer's conduct was so egregious so as to put every reasonable officer on notice that it violated the Fourth Amendment because he ordered a police dog to attack the plaintiff for at least two minutes, despite the fact that the plaintiff was lying on the ground and complying with the officer's commands. 208 F.3d at 927.

Unlike in these "egregious" and "obvious" cases, neither common element was present here. H.S. was resisting when Deputy Castoro used the wrestling move to free H.S.'s hands from his hoodie pocket. And H.S. was not subdued. He refused to give his name and he refused to remove his hands from his pocket because he believed Deputy Castoro was trying to arrest him.

Indeed, in similar cases where the plaintiff was resisting and was not subdued when the officer used force, we have found the officer's conduct was not so egregious that it violated the Fourth Amendment. *Merricks v. Adkisson*, 785 F.3d 553 (11th Cir. 2015), is a good example. There, the officer jerked a plaintiff out of her car—by yanking on her arm twice, with enough force that it tore her rotator cuff—when she resisted a search by refusing to let go of her car keys. *Id.* at 557, 564–65. We concluded the conduct was not so egregious so as to put every reasonable officer on notice

because significant force was applied only after the plaintiff refused to let the officer search her car and as she was actively struggling to keep him from searching her car. *Id.* at 564 (finding that plaintiff did not meet "this narrow exception"—"a difficult exception to meet"—when the officer had probable cause to search plaintiff's vehicle and "[n]ot only did she refuse to let him search it, she struggled with him to keep him from searching it by stopping him from taking her keys to turn off her car").

Here, too, Deputy Castoro lifted H.S. off the ground only after H.S. repeatedly refused verbal commands to give his name or to take his hands out of his pocket, and as he was actively resisting Deputy Castoro's attempt to remove H.S.'s hands from his hoodie pocket. As in *Merricks*, Deputy Castoro's significant force to subdue H.S. was not "far beyond the hazy border between excessive and acceptable force . . . and every reasonable officer in [his] situation would [not] know that the force used was unlawful." *See Merricks*, 785 F.3d at 564–65 (quoting *Priester*, 208 F.3d at 926).

## CONCLUSION

In the end, H.S. has not shown that Deputy Castoro's conduct violated a clearly established right. For that reason, we agree with the district court that the deputy was entitled to qualified immunity.

**AFFIRMED.**